# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                            Case No. 07-CR-123

**DARIN BOWIE**
       **Defendant.**

## DECISION AND ORDER

Defendant Darin Bowie moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, I deny his motion.

### I. FACTS AND BACKGROUND

A jury convicted defendant of conspiracy to distribute 5 kilograms or more of cocaine, five counts of distribution of cocaine, and two counts of possession with intent to distribute cocaine, and on August 7, 2009, I sentenced him to 235 months in prison. (R. 634, 701.) The evidence showed that defendant obtained kilograms of cocaine from Calvin Coleman, who in turn obtained it from Jimmie Durant and Robert Hampton. Defendant distributed cocaine he obtained to numerous others, many of whom were also charged in this case. The government arranged a number of controlled buys from defendant through a confidential informant, and a subsequent wiretap obtained by the government intercepted numerous calls concerning defendant's drug trafficking activities. (R. 761 at 24-25.)

Agents arrested defendant on December 14, 2006, after an informant set up a buy, and defendant made a statement admitting that cocaine seized from his van was intended for the sale to the informant. Defendant also consented to a search of his residence, pursuant to

which agents seized a loaded gun, 148 grams of cocaine, $20,000 cash, a digital scale, and a 2002 Mercedes. (R. 761 at 25.)

Defendant initially cooperated with the government, admitting that he supported himself by selling drugs and knock-off clothing items. He further admitted that Coleman was his primary source and made a call to Coleman, arranging a transaction for 9 ounces, observed by agents. However, after that transaction, and not under the control of agents, defendant called Coleman and told him to count the money, as it would probably be short. The next day, he again called Coleman, again not under the control of agents, to set up a meeting, at which he apparently alerted Coleman to the investigation. (R. 761 at 25.)

Defendant later got back on the cooperation track, providing a debrief in which he identified various customers and the amounts he dealt with them. But he then changed course again, writing a letter to a co-defendant, Robert Wilson, telling Wilson not to plead. He then went to trial himself, and the jury convicted on all counts. (R. 761 at 25-26.) Forty-two years old at the time of sentencing, defendant's record included juvenile adjudications for first degree sexual assault and obtaining telecommunications service by fraud, and an adult ordinance violation for obstructing an officer. (R. 761 at 26-27.)

At sentencing, I found defendant responsible for 15-50 kilograms of cocaine, producing a base offense level of 34, U.S.S.G. § 2D1.1(c)(3) (2008), then added 2 levels for firearm possession, U.S.S.G. § 2D1.1(b)(1), and 2 levels for obstruction of justice, U.S.S.G. § 3C1.1, for a final level of 38. Coupled with defendant's criminal history category of I, this produced a range of 235-293 months. (R. 761 at 7.) On consideration of the 18 U.S.C. § 3553(a) factors, I found a sentence at the low end of the range sufficient but not greater than necessary. (R. 761 at 28-32.)

Defendant filed a notice of appeal, but his appointed appellate counsel moved to withdraw under Anders v. California, 386 U.S. 738 (1967), and the Seventh Circuit dismissed the appeal as frivolous. United States v. Bowie, 392 Fed. Appx. 480 (7th Cir. 2010). In 2001, defendant filed a collateral attack under 28 U.S.C. § 2255, which I denied, Bowie v. United States, No. 11-C-0734, 2011 U.S. Dist. LEXIS 102489 (E.D. Wis. Sept. 12, 2011), and the Seventh Circuit dismissed his appeal of that order.

On May 14, 2015, I reduced the prison sentence from 235 to 188 months pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the guidelines, which reduced the base offense level from 34 to 32. (R. 861.) Defendant is currently serving his sentence at FCI Jesup, with a projected release date of April 29, 2022.[1]

On July 10, 2020, defendant filed a pro se motion to appoint counsel to assist him in seeking compassionate release under 18 U.S.C. § 3582(c)(1). (R. 895.) I referred the matter to Federal Defender Services ("FDS"), pursuant to the court's standing order regarding First Step Act motions (R. 896), and on October 1, 2020, FDS filed a supplemental motion for compassionate release (R. 899). The government responded in opposition on October 30, 2020 (R. 902), and defendant (represented by FDS) replied on November 16, 2020 (R. 904). The matter is ready for decision.

## II.  DISCUSSION

**A.     Compassionate Release Standards**

Pursuant to the First Step Act of 2018, the district court may grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

---

[1]Defendant indicates that he was notified that he will be transferred to a halfway house on May 5, 2021. (R. 904 at 5.)

3

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court;[2] (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable § 3553(a) factors and the need to protect the public. See United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria

---

[2]In United States v. Scott, 461 F. Supp. 3d 851, 857-60 (E.D. Wis. 2020), I determined that this "exhaustion" requirement is not jurisdictional and may in some cases be waived or excused.

4

to be applied and a list of specific examples. See 28 U.S.C. § 994(t).[3] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from

---

[3]Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

5

> which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); accord United States v. McCoy, No. 20-6821, 2020 U.S. App. LEXIS 37661, at *19 (4th Cir. Dec. 2, 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the

6

now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").[4]

Giving the statutory terms their ordinary meaning, a defendant seeking compassionate release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, regular, or common, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. Scott, 461 F. Supp. 3d at 862; see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide discretion without being conclusive); United States v. Ramirez, No. 17-10328, 2020 U.S. Dist. LEXIS 83363, at *6 (D. Mass. May 12, 2020) (indicating that U.S.S.G. § 1B1.13 provides helpful guidance on the factors that might support compassionate release, although it is not ultimately conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions).

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence

---

[4] As the government notes, a guideline could be binding in the § 3582(c) context. (R. 902 at 4, citing Dillon v. United States, 560 U.S. 817 (2010).) As the Seventh Circuit held in Gunn, however, there is no "applicable" guideline for compassionate release motions brought by defendants.

7

should be modified. Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Black, No. 1:11-cr-00083, 2020 U.S. Dist. LEXIS 142523, at *11 (S.D. Ind. Aug. 10, 2020); United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020). The court must also consider whether release would pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

**B. Analysis**

    **1. Exhaustion**

Defendant made an administrative request for compassionate release, which the warden denied on June 12, 2020. (R. 895 at 4.) He has satisfied the exhaustion requirement.

    **2. Extraordinary and Compelling Reasons**

Defendant seeks release based on the COVID-19 outbreak at FCI Jesup, his rapidly approaching release date, his age (now 54), his unusually long sentence, and his good behavior in prison. (R. 899 at 1, 12.) Defendant discusses the magnitude of the COVID-19 pandemic, which has hit jails and prisons especially hard. (R. 899 at 5.) He further criticizes

8

the BOP for releasing too few inmates pursuant to the Attorney General's authorization under the CARES Act. (R. 899 at 6.) Defendant acknowledges his lack of COVID-19 co-morbidities but notes that even if he is not especially vulnerable he is not immune, and the virus has killed young and seemingly healthy people. (R. 899 at 7.) He notes that some courts have agreed to release inmates who are close to completing their sentences, even if they lack risk factors for severe illness. (R. 899 at 7-8, collecting cases.) He further notes that even if he experiences a mild or asymptomatic case he could pass the virus on to others who are at higher risk or to staff who then spread it in the community. This is why public health officials have recommended reducing prison populations as a means of combating the virus. (R. 899 at 8.) He contends that he falls in the class of persons who should be released: those closely approaching their release dates, who have served the overwhelming majority of their sentences, are going home soon anyway, and can be released early without compromising public safety.[5] (R. 899 at 9.)

As indicated, courts have rejected the notion that general concerns about the danger posed by COVID-19 in prison support release under § 3582(c)(1)(A). See, e.g., United States v. Johnson, No. 17-cr-162, 2020 U.S. Dist. LEXIS 93065, at *9 (E.D. Wis. May 28, 2020); Scott, 461 F. Supp. 3d at 863. The statute contemplates an individualized determination, which may include consideration of the prisoner's specific medical problems and their severity, as well as conditions at his particular facility. United States v. Hicks, No. 18-CR-227, 2020 U.S. Dist.

---

[5]Apparently, defendant was denied release to home confinement because of his 1983 juvenile sexual assault offense. Defendant acknowledges that the court does not have the authority to order home confinement under the CARES Act, but he asks the court to find that the BOP's failure to do so supports a finding of an extraordinary and compelling reason to grant release. (R. 899 at 9.)

9

LEXIS 213100, at *17 (E.D. Wis. Oct. 7, 2020).

Defendant contends that FCI Jesup has been hard hit, but he does not otherwise develop the argument. (R. 899 at 1.) In response, the government notes that this facility has actually fared rather well, with one of the lowest infection rates for FCIs. (R. 902 at 15.) In reply, defendant contends that Jesup recently experienced a second major outbreak, with 4 inmates positive on November 9, 2020, and 105 positive the next day. (R. 904 at 4.) According to the most recent data from the BOP, at FCI Jesup 2 inmates are positive, 19 staff are positive, 1 inmate has died, 0 staff have died, 423 inmates have recovered, and 3 staff have recovered.[6] While these figures are concerning, I cannot conclude that the conditions at defendant's facility are so dire as to support release in his case.

In his supplemental motion, defendant makes the vague claim that his health has deteriorated, but he does not explain how; he concedes that he suffers from no medical conditions placing him at greater risk of severe illness from COVID-19. (R. 899 at 1.) In reply, defendant notes that the CDC recently concluded that being a current or former cigarette smoker increases the risk of severe illness from COVID-19.[7] (R. 904 at 2.) He states: "That's unfortunate for Bowie, who reports having smoked a pack and a half of cigarettes a day for almost twenty years." (R. 904 at 3.) He also cites a number of cases in which courts considered smoking history as part of the compassionate release analysis. (R. 903 at 3, collecting cases.)

---

[6] https://www.bop.gov/coronavirus/ (last visited December 21, 2020).

[7] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#smoking (last visited December 18, 2020).

10

Courts are divided regarding whether a history of smoking can provide grounds for release under § 3582(c)(1)(A). See, e.g., United States v. Noel, No. 2:16-cr-00323, 2020 U.S. Dist. LEXIS 207129, at *6-7 (D. Nev. Nov. 5, 2020) (collecting cases). I will assume that it could, in an appropriate case. The problem here is that defendant presents no evidence, aside from his own statement in the reply brief, regarding his smoking history. See United States v. Robinson, No. 3:15-cr-00080, 2020 U.S. Dist. LEXIS 233193, at *10 (D. Nev. Dec. 10, 2020) ("[W]hile the CDC indicates that smoking may increase one's risk, the Court has no evidence of Defendant's history of smoking besides a vague unsworn statement that he made to his counsel."). Nor does he present evidence that his smoking has had any impact on his health. See United States v. Rager, No. 2:13-cr-199, 2020 U.S. Dist. LEXIS 237853, at *6-7 (S.D. Ohio Dec. 17, 2020) (denying release where medical records contained no report of any adverse physical symptoms due to smoking); United States v. Kupahu, No. 05-00490, 2020 U.S. Dist. LEXIS 231704, at *15 (D. Haw. Dec. 9, 2020) (denying release where there was no evidence the prisoner's history of smoking impacted his health); see also United States v. Khacho, No. 1:16-cr-00074, 2020 U.S. Dist. LEXIS 226540, at *13 (E.D. Cal. Nov. 27, 2020) ("Although defendant's history of smoking places him at greater risk of suffering a severe illness from COVID-19, other courts have found that there are policy reasons why smoking by itself—especially with no supporting evidence that the history of smoking has caused significant health ailments—may not be an appropriate ground justifying compassionate release.").[8] As

---

[8] Defendant told the PSR writer that he periodically suffered from chest pain, but the report cited no medical evidence of a heart problem. (PSR ¶¶ 135-138.) Defendant makes no claim in this litigation that he should be released due to a heart condition. Defendant made contradictory claims about drug use (PSR ¶ 143; R. 761 at 27), but nothing in the PSR appears to corroborate his claim of heavy cigarette smoking.

11

for his age, while the CDC has acknowledged that the risk increases as people get older, at 54 defendant does not fall in the high risk category.[9]

As for the length of his prison term, the compassionate release statute does not give district courts free rein to reconsider lawfully imposed sentences. See, e.g., United States v. Andrews, No. 05-280-02, 2020 U.S. Dist. LEXIS 149514, at *15 (E.D. Pa. Aug. 19, 2020). Courts have concluded that drastic disparities created by sentencing law reforms may constitute an extraordinary and compelling reason supporting modification. E.g., United States v. Ledezma-Rodriguez, No. 3:00-CR-00071, 2020 U.S. Dist. LEXIS 123539, at *10 (S.D. Iowa July 14, 2020). For instance, courts have modified sentences based on the since abolished "stacking" rule for § 924(c) offenses. See, e.g., McCoy, 2020 U.S. App. LEXIS 37661, at *29. They have also reduced mandatory drug sentences for recidivist offenders based on Congress's decision to narrow the range of prior offenses that qualify as predicate convictions. See, e.g., United States v. Williams, No. 5:12-cr-14, 2020 U.S. Dist. LEXIS 179932, at *21 (W.D. Va. Sept. 29, 2020). Defendant received a lengthy sentence, be sure, but he points to no similar changes in the law applicable to his case.[10] Accordingly, while I will assume that a court may under § 3582(c)(1)(A) modify an unusually long sentence, defendant fails to demonstrate that his term falls in that category.

This leaves defendant's contention that he should be released because he has served most of his within-range sentence. (See R. 904 at 4-5.) While the length of a prisoner's sentence and the amount of time served are relevant considerations, United States v. Meyer,

---

[9]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited December 18, 2020).

[10]He did receive the benefit of the retroactive "drugs minus 2" guideline amendment.

12

No. 14-CR-230, 2020 U.S. Dist. LEXIS 199117, at *23 (E.D. Wis. Oct. 27, 2020); Scott, 461 F. Supp. 3d at 863 n.9, they are primarily part of the § 3553(a) analysis, as I discussed in Meyer. Defendant develops no argument that his case is unusual or extraordinary, or his need for release compelling, on this basis. And while it is true that he, unlike the defendant in Meyer, received a guideline sentence, this also does not make his case extraordinary.

### 3. Section 3553(a) Factors

Even if defendant could demonstrate extraordinary and compelling reasons for release, the § 3553(a) factors would weigh against his request. As the government notes, defendant committed a serious offense, involving a substantial amount of cocaine and the possession of a firearm, then engaged in obstructive conduct. (R. 902 at 15-16.) Defendant's sentence, while lengthy, was appropriate given the nature of the offense. The government further notes that since his incarceration defendant has been disciplined at least three times, suggesting a continued lack of respect for the law. (R. 902 at 16.)

In his discussion of the § 3553(a) factors, defendant notes the huge impact his decision to stop cooperating had on the sentence: it cost him 3 points for acceptance of responsibility, 2 points for safety valve, 2 points for obstruction, and probably a U.S.S.G. § 5K1.1 motion. (R. 899 at 10-11.) While this is true, defendant fails to explain why it supports a reduction of his sentence; as he acknowledges, he should not receive credit for something he did not do, and post-offense conduct is a relevant sentencing consideration. I cannot conclude that the effect of defendant's post-offense decisions supports a sentence reduction here.

Defendant further argues that given his prison conduct (completion of programming, prison work, little discipline), his current age, and his limited prior record, release would not endanger the public. (R. 899 at 11; R. 904 at 5-6.) He states that he has a job waiting for him

13

in Alabama and a stable release plan.  (R. 899 at 11; R. 904 at 6.)  While these are factors in his favor, defendant does not elaborate on them.  He does not, for instance, say what the job is or explain what his release plan entails.  Under all the circumstances, the § 3553(a) factors do not support defendant's motion.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to reduce sentence (R. 899) is denied.  The clerk may terminate the pro se motion to appoint counsel.  (R. 895.)

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2020.

/s Lynn Adelman
LYNN ADELMAN
District Judge

14